UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 4:14-cr-00026-RRB |
| Plaintiff, | SUPPLEMENTAL MOTION TO VACATE CONVICTION |
| vs. | |
| GUY CHRISTOPHER MANNINO, | |
| Defendant. | |

A. Issues Presented

1. Did the Government did not fulfill its obligations pursuant to the discovery rules and *Brady v. Maryland* to turn over all recorded conversations between Mr. Mannino and Julius Chambers?

2. Did Mr. Mannino receive effective assistance of counsel when his attorney did not move to suppress evidence pursuant to FRE 404(b) of an alleged murder conspiracy between himself and Mr. Cox to kill Mr. Tiemessen after Judge Gleason found Mr. Cox to be an unbelievable witness?

3. Did Mr. Mannino receive effective assistance of counsel when his attorney did not propose a renunciation jury instruction after Mr. Mannino testified he terminated any plot to harm anyone, testimony that was corroborated by law enforcement?

////

////

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 1

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

B. Statement of Facts

Guy Mannino was charged on cause number 14-26 by Superseding Indictment with five counts of solicitation to commit murder. The alleged victims of the five counts were Greg Cox, M.J. Haden, Gregory Moore, William Moore, and Richard Sutherland respectively. Mr. Mannino was convicted by a jury of counts 1, 4, and 5. The jury acquitted him of counts 2 and 3. Mr. Mannino filed a Petition to Vacate Conviction pursuant to 18 U.S.C. §2255 (hereinafter "§2255 Petition"). Mr. Mannino, through counsel, files this Supplemental §2255 Petition.

According to the Government's theory of the case, Mr. Mannino was originally charged in cause number 13-21 with various offenses. Mr. Mannino eventually agreed to plead guilty to Transfer of Unregistered Firearms, Possession of an Unregistered Machinegun, Illegal Possession of Machinegun, and Concealment of Bankruptcy Assets. At sentencing, there was a significant dispute about Mr. Mannino's offense level. The defense argued his offense level was 17 with a presumptive sentencing range was 24-30 months. The Government argued his offense level was 27 with a presumptive sentencing range of 70-87 months. The major dispute was whether Mr. Mannino obstructed justice by attempting to hire Greg Cox to murder another witness, John Tiemessen.

At Mr. Mannino's sentencing hearing, Mr. Cox testified before Judge Gleason. Judge Gleason found Mr. Cox incredible and refused to increase his offense level due to obstruction of justice. Specifically, she found:

////

////

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 2

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 2 of 15

> And with regard to those issues, I find as follows: First, I do find that with regard to the government's and the presentence report's assertion that the Court should apply a sentencing enhancement because of a – based on a finding that there was an intention to use the machine gun for the solicitation of murder, I find that the government has not proven that particular fact by clear and convincing evidence. I say so because I found Mr. Cox to be a not credible person, and I don't think really the government was advancing him as a credible person. That is who he is. And I think he acknowledged that himself, that he has not been particularly forthright. And the best evidence that the government presented on this related to the wiretapped phone – or in-person conversation between Mr. Cox and Mr. Mannino in September of the following year. And I was not persuaded that the evidence that was presented there was sufficient to demonstrate that Mr. Mannino had solicited Mr. Cox with the intention of murdering Mr. Tiemessen. I say that, although I do see that there was more likely than not certainly improper, possibly illegal, communications between Mr. Mannino and Mr. Cox about doing harm to others, but at the end of the day, I don't find that the proof was the requisite clear and convincing evidence that would warrant an enhancement of the nature that's requested by the government with regard to the particular firearms as to which Mr. Mannino pled guilty in this case.

Sentencing Hearing (March 11, 2015), 64-65. The Court found his offense level was 19 and his range was 30-37 months. The Court imposed 36 months in prison.

Following the sentencing hearing in 13-21, the Government filed the instant case. Cause number 14-26. Prior to the commencement of the trial, the Government brought a motion to preclude the defense from discussing Judge Gleason's sentencing decision. That motion was granted. Pretrial Conference Transcript (January 29, 2015), 15. Later, the Court, Prosecutor Joseph Bottini, and defense counsel Scott Dattan had the following exchange.

> MR. DATTAN: I need to understand your ruling with respect to Judge Gleason.
> THE COURT: Yes.

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 3

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 3 of 15

> MR. DATTAN: She made a specific finding that Greg Cox was not credible.
> THE COURT: Okay.
> MR. DATTAN: Are you telling me that if he takes the stand I cannot raise that?
> THE COURT: Yes, I'm telling you that. Her finding –
> MR. DATTAN: (Indiscernible).
> THE COURT: She was – she was in the context of determining whether the murder for hire – whether or not the murder for hire enhancement had been established by clear and convincing evidence and my understanding is she simply said, first of all, because the enhancement was so much, that it had to be clear and convincing instead of preponderance and then she went on to say that it didn't reach those standards of – of clear and convincing and ruled favorably to Mr. Mannino. I'm aware of all that. But I don't – what's the Government's position on that issue?
> MR. BOTTINI: Yeah, I think it's – it's still inadmissible hearsay and it's irrelevant.
> THE COURT: Yeah, she's not going to be called as a witness.

Pretrial Conference Transcript (January 29, 2015), 18.

Relevant to the §2255 Petition, the Government explained its theory for solicitation of murder in its opening statement.

> The other second significant event in Mr. Mannino's life in 2011 is that he files a lawsuit. He sues another chiropractor here in Fairbanks. That other party, the other chiropractor, hires an attorney by the name of John Tiemessen to represent her. Mr. Tiemessen and Mr. Mannino had a very adversarial relationship during that litigation, to the point where, in 2012, Mr. Mannino approached a guy who was a friend of his at the time, a guy named Greg Cox, and asked Greg Cox to kill John Tiemessen. Now, Cox is a guy who had known Mannino for some time. They both were involved in, for lack of a better term, the firearms circle here in Fairbanks. Nothing wrong with that. They were both firearms enthusiasts, including a machine gun club, and things like that. Mr. Mannino believed that Greg Cox was an ex-Navy SEAL, which wasn't true. Cox wasn't an ex-Navy SEAL. But Mannino thought – Mannino thought that was the case, and he thought that Greg Cox had certain skills that could be utilized to take care of the problem he had, which was John Tiemessen. So he goes to Cox in early 2012 and tries to get him to commit the murder of John Tiemessen.

SUPPLEMENTAL MOTION TO VACATE CONVICTION – 4

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 4 of 15

1 | Trial Transcript Day 1 (February 1, 2016), 157-58.

The Government's opening statement prompted the following exchange between the parties.

> MR. DATTAN: Your Honor, it's not – I don't jump up and object during somebody else's opening statement – . . . And since he's laid out all this stuff about the prior case, I think I should be allowed to go into Judge Gleason's rulings on that prior case. Otherwise, they're going to be left with the impression that – Because he said so, that he stated it as fact that Greg Cox asked – or Greg Cox was asked to kill Tiemessen, and that was found not to be a fact.
> MR. BOTTINI: That's what Cox is going to say, though.
> . . .
> THE COURT: I don't think you should approach it now. Give me time to see how the evidence develops, and we'll see if your other argument is – with regard to Judge Gleason – again, that's what you're referring to?
> MR. DATTAN: Well, yeah. I think I should be allowed to tell them that Judge Gleason did not find him responsible for that murder, because he said he was responsible and that was part of the sentencing hearing. And I –
> MR. BOTTINI: I didn't say that.
> THE COURT: I didn't hear it that way.
> MR. DATTAN: He said it as a fact, Greg Cox was asked to kill Tiemessen. He said –
> MR. BOTTINI: But, you know –
> MR. DATTAN: - said that it was in the presentence report, and he left the clear impression that Chris was found responsible for that. I'm going to tell them he was not found responsible for that, that he was sentenced for the mistakes he made on paperwork to the – on the ATF forms and to concealing papers, yes.
> THE COURT: Okay, okay. You can do that, but don't talk about Judge Gleason making a finding, because that was after the fact, and I think that that's - that's way beyond -
> MR. DATTAN: I can't say that he was not found responsible for this solicitation of murder?
> THE COURT: You can say he wasn't sentenced based on that solicitation of murder. When he ultimately was sentenced, it did not include --
> MR. DATTAN: He was neither charged nor sentenced, but you're telling me I can't say he was not found responsible?

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 5

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 5 of 15

> THE COURT: Not by Judge Gleason. I'm saying that the ultimate sentence did not include a finding of responsibility for solicitation, because that's a fact. It's in the sentence. This is what he was sentenced for. You can certainly say that. But to go say that – add that Judge Gleason doesn't believe that, after I've explained earlier she was operating in a very limited context  whether that enhancement was appropriate by clear and convincing evidence, and giving him the benefit of the doubt, she decided not to – because of the vast increase, she decided not to apply that.
> MR. DATTAN: Well, I disagree with your interpretation with the way Judge Gleason reached that, but –
> THE COURT: Okay. Well, I think I've given you enough to say that, you know, when he was sentenced, there was no enhancement, which is a fact for solicitation for murder. Say it however you want, but I'm just saying you can't make it that Judge Gleason found as a matter of law that he wasn't. The sentence clearly indicates that it wasn't part of the sentence. Just leave Judge Gleason out of it.
> MR. DATTAN: Okay.

Trial Transcript Day 1 (February 1, 2016), 172-74.

C. Argument
  1. <u>The Government did not fulfill its obligations pursuant to *Brady v. Maryland* to turn over all recorded conversations between him and Julius Chambers.</u>

The Government has a duty under the local discovery rules and the Constitution to provide all exculpatory evidence to the defense. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  Mr. Mannino has a good faith belief the Government did not provide all necessary *Brady* material.

One of the primary witnesses against Mr. Mannino was Julius Chambers. During the relevant periods of this case, Mr. Mannino and Mr. Chambers were incarcerated together at Fairbanks Corrections Center.  They had at least five discussions in the law library. The Government's theory was that during those discussions Mr. Mannino solicited Mr. Chambers to kill a variety of people.  Mr.

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 6

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 6 of 15

Mannino's theory was that the conversations were being taken out of context and did not constitute solicitations.

Prior to trial, the Government provided the recordings of the fourth and fifth conversations. The first three conversations were never provided. At the time of trial, the Government represented that recordings of the first three conversations either did not exist or had been lost.

After the jury trial and on the eve of sentencing, the Government provided the defense with a letter to defense counsel Scott Dattan (hereinafter "*Brady* letter"). Despite a diligent search, Mr. Dattan has been unable to locate the *Brady* letter. A copy of the *Brady* letter provided to Mr. Mannino by Mr. Dattan was lost during BOP transport. See Declaration of Thomas E. Weaver. It is Mr. Mannino's recollection that the letter stated that shortly before sentencing the recordings of the first three conversations were located, the conversations listened to, and that, in the opinion of the Government, did not contain any exculpatory information.

There are two issues pertinent to Mr. Mannino's *Brady* claim. The first issue is whether recordings of the first three conversations exist. Because the *Brady* letter cannot be located, Mr. Mannino cannot provide documentary evidence of its contents. But it is Mr. Mannino's good faith belief that the letter represented that the recordings were located after the trial but before sentencing. Once the recordings were located, they should have been promptly provided to the defense.

The second issue is whether Mr. Mannino can prove prejudice from the failure to provide the recordings. The Government had a duty to provide all discovery prior to trial. Assuming arguendo that the first three recordings were

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 7

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 7 of 15

misplaced prior to trial, they should have been promptly provided as soon as they were located. Had they been promptly provided, the issue of their relevance could have been dealt with prior to sentencing rather than in a §2255 petition. This Court should order the Government to provide the recordings now with leave to file supplemental briefing addressing the issue of prejudice.

2. <u>Mr. Mannino did not receive effective assistance of counsel when his attorney did not move to suppress evidence of an alleged murder conspiracy between himself and Mr. Cox to kill Mr. Tiemessen.</u>

Defendants have a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland,* when an attorney commits an act or omission that is that is legally deficient and the defendant has been prejudiced by the act or omission, reversal is required. An attorney's performance is deficient if it is objectively unreasonable under prevailing professional norms. In this case, Mr. Mannino did not receive effective assistance of counsel when his attorney failed to file a motion to suppress evidence that he had previously solicited Mr. Cox to kill Mr. Tiemessen.

The jury heard evidence in Mr. Mannino's murder solicitation trial that he previously solicited Mr. Cox to kill Mr. Tiemessen. No reasonable defense counsel would fail to move to suppress this highly inflammatory evidence. Specific to this allegation, Judge Gleason had previously found that "Mr. Cox to be a not credible person," and she "was not persuaded that the evidence that was presented there was sufficient to demonstrate that Mr. Mannino had solicited Mr. Cox with the intention of murdering Mr. Tiemessen." A timely motion to

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 8

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 8 of 15

suppress would have been granted and Mr. Mannino was prejudiced by the failure to bring the motion.

As a general proposition, prior bad acts by a defendant are not admissible to prove conformity on a particular occasion. FRE 404(b). They may, however, be admissible to prove other purposes, such as motive, opportunity, intent, preparation or plan. FRE 404(b). To be probative of something other than criminal propensity, the prior bad act evidence must: (1) prove a material element of the crime currently charged; (2) show similarity between the past and charged conduct; (3) be based on sufficient evidence; and (4) not be too remote in time. *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997). In determining whether a prior act is proved, although the Court need not hold an evidentiary hearing, it still must be satisfied that a jury would find the prior act by a preponderance of the evidence. *United States v. Huddleson*, 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 77 (1988). Under the principle of collateral estoppel, applicable under the Fourteenth Amendment Due Process Clause, once an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swanson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469. The rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. *Ashe* at 444.

Most collateral estoppel claims in criminal cases arise in the context of a general verdict of acquittal by a jury. The Supreme Court has held that general verdicts will not usually create a collateral estopppel bar. For instance, in *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)

SUPPLEMENTAL MOTION TO VACATE CONVICTION – 9

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 9 of 15

the Supreme Court held that a general jury verdict of "not guilty" only establishes that the prosecutor was unable to prove all the elements of the offense beyond a reasonable doubt and does not preclude a prosecutor at a later date from establishing the truth of the allegations by a preponderance of the evidence. When reviewing a prior judicial determination for "courts must examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration. The Courts of Appeals have unanimously placed the burden on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling* at 350 (citations omitted).

The facts of Mr. Mannino's case differ from *Dowling*, however, in one material respect. Mr. Mannino is not relying on a general verdict of acquittal. Rather, he is relying on specific findings by Judge Gleason that Mr. Cox was "not credible" and that the Government evidence was not "sufficient to demonstrate that Mr. Mannino had solicited Mr. Cox with the intention of murdering Mr. Tiemessen." Reviewing the record of the prior sentencing, taking into account the pleadings, evidence, and judicial findings, it is clear that the Government did not establish in the prior proceeding Mr. Mannino's prior alleged solicitation. This finding should bar relitigation of this issue under the principle of collateral estoppel.

The Government may argue that collateral estoppel does not apply because Judge Gleason was applying a different standard of proof at the prior sentencing hearing. While it is true that Judge Gleason was using the clear and

SUPPLEMENTAL MOTION TO VACATE CONVICTION – 10

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 10 of 15

convincing evidence standard, that is not dispositive. In *Ashe*, the Court looked beyond the general verdict to determine the "single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." *Ashe* at 445. Similarly, the single rationally conceivable issue in dispute at Mr. Mannino's first sentencing hearing was whether Mr. Mannino solicited Mr. Cox to murder Mr. Tiemmessen and Judge Gleason found he had not.

Nor can it be said that defense counsel was not on notice of the issue. Mr. Dattan had been Mr. Mannino's attorney at the original sentencing hearing. Further, Mr. Dattan tried repeatedly to get Judge Gleason's findings before the jury. As the Government correctly pointed out, Judge Gleason's findings were hearsay and not admissible.[1] *See In re the Detention of Pouncy*, 144 Wn.App. 609, 184 P.3d 651 (2008) ("It is well-established that judicial findings in other cases proffered as evidence are generally characterized as inadmissible hearsay.") (citations omitted). The proper course of action for Mr. Dattan was not to seek to admit Judge Gleason's findings, but to move to suppress any testimony about an alleged prior solicitation. The motion would have been granted under the doctrine of collateral estoppel. The failure to make such a motion constituted ineffective assistance of counsel. Reversal is required.

3. <u>Mr. Mannino did not receive effective assistance of counsel when his attorney did not propose a renunciation jury instruction.</u>

At trial, Mr. Mannino's defense counsel failed to raise a statutory affirmative defense. The failure to raise an affirmative defense in this context is

---

[1] The Government also argued the findings were irrelevant. While Mr. Mannino believes the findings were relevant, he agrees they were inadmissible hearsay.

SUPPLEMENTAL MOTION TO VACATE CONVICTION – 11

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 11 of 15

deficient performance. *Strickland v. Washington.* Where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *United States v. Mooney*, 497 F.3d 397 (6th Cir. 2007) (reversing a conviction for failure to advise the defendant of an applicable affirmative defense).

Mr. Mannino was charged with five violations of solicitation to commit murder in violation of 18 U.S.C. 373, which reads, in part:

> (a) Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.
>
> (b) It is an affirmative defense to a prosecution under this section that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant prevented the commission of the crime solicited. A renunciation is not "voluntary and complete" if it is motivated in whole or in part by a decision to postpone the commission of the crime until another time or to substitute another victim or another but similar objective. If the defendant raises the affirmative defense at trial, the defendant has the burden of proving the defense by a preponderance of the evidence.

Subsection (b) sets forth an affirmative defense (hereinafter "renunciation defense"). Mr. Dattan did not request a jury instruction based upon the

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 12

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 12 of 15

renunciation defense of subsection (b). This constituted ineffective assistance of counsel in violation of Mr. Mannino's Sixth Amendment right to counsel, Sixth Amendment right to present a defense, and Fourteenth Amendment due process rights.

Mr. Mannino testified on his own behalf at trial. Mr. Mannino was asked about the events as they occurred shortly before his arrest for solicitation. Repeatedly in his testimony, Mr. Mannino asserted that he advised Mr. Chambers not to do anything that would result in harm to another person. Relevant portions of his testimony include:

> Q: Well, we listened to it and I look at it on the transcript, and shortly into the conversation, you tell him you're not asking him to do anything. Why did you tell him that?
> A: That was the standard way I started our conversations, many times, because I wanted it clear. And this time I wanted it clear, because this was the last time I was going to deal with him. And I wanted it real clear, because I knew I was going to throw him under the bus. And I wanted -- I wanted a clean conscience on it.
> . . . .
> Q And then once again, during this meeting -- it's on Page 9 of this transcript, anyway -- you say, "I don't want you to do that. I think you're causing a shit storm." What did you mean by that?
> A If he went and shot Stonesifer, they would hunt him down and chances are they would kill him.
> Q And what's with the phrase, "But you're not my missile"?
> A In jail, in prison, there's guys that you call missiles. It's someone you send to do something. I wouldn't have a missile. J.T. has missiles. (Indiscernible) to his missile, and you've got -- and you do, and that's -- there's no ifs, ands, or buts about it. And on numerous occasions, I'd start the conversation, like, "This isn't something -- this is you. You're not doing this for me. I'll help you. No matter what you do, I'll help you. You don't have to do anything for me." But he didn't want to let it go. You know, he made it really clear. He, on multiple occasions, said, "I'd rather go out in a blaze of glory."

Trial Transcript Day 3 (February 3, 2016), 180-83.

SUPPLEMENTAL MOTION TO VACATE CONVICTION – 13

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 13 of 15

The jury also heard credible evidence that shortly after Mr. Chambers was released from custody, Mr. Mannino tried to alert authorities that people's lives were in danger. Sergeant Daniel Colang, the security officer at Fairbanks Correction Center, was called as a witness by the Government. He testified that shortly after Mr. Chambers' release, Mr. Mannino flagged him down. Mr. Mannino was in a panic. Trial Transcript Day 3 (February 3, 2016), 75. Mr. Mannino told Sergeant Colang that Mr. Chambers needed to be located "because he could hurt somebody if we don't find out where he is right away." Trial Transcript Day 3, 71. Sergeant Colang, who was already aware of the investigation and the fact that Mr. Mannino and Mr. Chambers' conversations in the law library were being recorded, understood Mr. Mannino's panic to be "if Mr. Mannino did want someone hurt, that he was probably anticipating that J.T. [Chambers] may be in the process of doing that. He wanted that stopped, possibly, but he was concerned about that possibility." Trial Transcript Day 3, 71.

Mr. Mannino unequivocally testified that he attempted to persuade Mr. Chambers from harming anyone. If believed, Mr. Mannino's testimony constituted a renunciation of any murder solicitation. Mr. Mannino's testimony was corroborated by Sergeant Colang's testimony that Mr. Mannino tried to get law enforcement to intervene to prevent Mr. Chambers from hurting anyone. Sergeant Colang's testimony was undisputed; if fact, much of his testimony was elicited by the Government on direct examination.

Under the facts of this case, no reasonable defense counsel would fail to request a renunciation jury instruction. Mr. Mannino was prejudiced by the

SUPPLEMENTAL MOTION TO
VACATE CONVICTION – 14

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 14 of 15

failure because the renunciation defense likely would have succeeded at trial. Mr. Mannino did not receive effective assistance of counsel.

D. Conclusion

This Court should vacate Mr. Mannino's convictions pursuant to 18 U.S.C. §2255 and order a new trial.

DATED this 21st day of May, 2021.

                          ___*Thomas E. Weaver*___
                          Thomas E. Weaver WSBA # 22488
                          Attorney for the Defendant

SUPPLEMENTAL MOTION TO VACATE CONVICTION – 15

The Law Office of Thomas E. Weaver
P.O. Box 1056
Bremerton WA 98337
(360) 792-9345
tweaver@tomweaverlaw.com

Case 4:14-cr-00026-RRB   Document 214   Filed 05/21/21   Page 15 of 15