IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY CHRISTOPHER MANNINO,

Defendant.

Case No. 3:14-cr-00026-RRB

**ORDER AND OPINION ON PETITION
TO VACATE SENTENCE UNDER
28 U.S.C. § 2255
(Dockets 142 & 214)**

## I. INTRODUCTION

This matter comes before the Court on Defendant's Petition to Vacate Sentence under 28 U.S.C. § 2255. Having considered the parties' briefs, the petition is denied.

## II. BACKGROUND

In February 2016, a federal jury convicted Defendant, Guy Christopher Mannino, on three counts of Solicitation to Commit Murder in violation of 18 U.S.C. § 373.[1] The Court sentenced Mannino to a term of 204 months in prison, followed by three years of supervised release.[2] On appeal, the Ninth Circuit affirmed Mannino's conviction,[3] and the Supreme Court denied his petition for a writ of certiorari.[4]

---

[1] Docket 92.
[2] Docket 109.
[3] Docket 138 (CA9 Memorandum); Docket 139 (CA9 Mandate); *see also United States v. Mannino*, 706 F. App'x 355 (9th Cir. 2017).
[4] Docket 141.

Mannino, proceeding *pro se*, filed a petition to vacate his sentence under 28 U.S.C. § 2255 on March 4, 2019.[5]  The Government opposed Mannino's petition.[6]  The Court held Mannino's petition in abeyance while it resolved his separate motion for compassionate release.[7]  After denying his compassionate release motion, the Court appointed counsel to assist Mannino with his § 2255 petition.[8]  On May 21, 2021, Mannino's counsel filed a supplemental § 2255 petition,[9] which the Government also opposed.[10]  After Mannino's counsel apparently decided against filing a reply brief, Mannino asked the Court to "redefine [his] counsel's status as limited" and to allow him to file a *pro se* reply.[11]  The Court granted Mannino's request to file his own reply brief, but denied his request to "redefine" his counsel's status.[12]  Mannino filed his *pro se* reply brief on May 3, 2022.[13]

## III.   LEGAL STANDARDS

### A.    Section 2255 General Standard

Under 28 U.S.C. § 2255, a district court may "vacate, set aside, or correct" a sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States.[14]  If it determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[15]

---

[5] Docket 142.
[6] Docket 159.
[7] Docket 187.
[8] Docket 197.
[9] Docket 214.  Counsel's filing was intended only to supplement Mannino's *pro se* filings, not to totally replace them.  Docket 227 at 1.
[10] Docket 223.
[11] Docket 231 at 1–2.
[12] Docket 234.
[13] Docket 239.
[14] 28 U.S.C. § 2255(a).
[15] *Id.*

*United States v. Mannino*                                                                    Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                           Page 2

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 2 of 21

## B.    Evidentiary Hearings

Upon a defendant filing a § 2255 petition, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[16] "[T]he district court may deny a § 2255 motion without holding an evidentiary hearing if '(1) the petitioner's allegations, accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or allege conclusions rather than statements of fact.'"[17] Thus, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[18] "Section 2255 requires only that the district court give a claim 'careful consideration and plenary processing, including full opportunity for presentation of the relevant facts.'"[19]

## C.    Procedural Default

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review" unless the defendant "can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so."[20] This "procedural default" rule is "neither a statutory nor a constitutional requirement, but it

---

[16] 28 U.S.C. § 2255(b).

[17] *United States v. Geozos*, No. 3:06-CR-00082-RRB, 2010 WL 4942571 at *2 (D. Alaska Nov. 24, 2010) (quoting Dhillon Khosla, 28 U.S.C. § 2255 Checklist/Updated Supplement to Habeas Corpus Outline at 5 (2005)). *See also Lopez-Lopez v. United States*, No. CR 05-1242 TUC-DCB, CV 06-489 TUC-DCB, 2006 WL 2850055, at *1 (D. Ariz. Sept. 28, 2006) (quoting Rule 4(b), Rules Governing § 2255 Actions) ("A district court shall summarily dismiss a § 2255 petition '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'").

[18] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

[19] *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (quoting *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988)).

[20] *Sanchez-Lamas v. Oregon*, 548 U.S. 331, 350–51 (2006) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)). *See also United States v. Braswell*, 501 F.3d 1147, 1149 n.1 (9th Cir. 2007)

*United States v. Mannino*                                                   Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                      Page 3

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 3 of 21

is a doctrine adhered to by courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[21]  The rule does not apply to ineffective assistance of counsel allegations, however, primarily because in most cases the record is not sufficiently well developed at the direct appeal stage to properly evaluate such allegations.[22]

## IV.   DISCUSSION

### A.   Alleged *Brady* and Evidentiary Violations

Mannino first argues that his conviction was unconstitutional because the prosecution "suppressed portions of a recording, which were exculpatory in nature."[23]  Mannino alleges that the Government failed to provide him with copies of three recorded conversations Mannino had with a fellow prisoner, thereby violating his due process rights under *Brady*.[24]  In his supplemental petition, Mannino asserts that:

> After the jury trial and on the eve of sentencing, the Government provided the defense with a letter to defense counsel Scott Dattan (hereinafter "*Brady* letter").  Despite a diligent search, Mr. Dattan has been unable to locate the *Brady* letter.  A copy of the *Brady* letter provided to Mr. Mannino was lost during BOP transport.  It is Mr. Mannino's recollection that the letter stated that shortly before sentencing the recordings of the . . . three conversations were located, the conversations listened to, and that, in the opinion of the Government, did not contain any exculpatory information."[25]

The Court concludes that Mannino's allegation does not warrant relief.  As an initial matter, Mannino did not raise this argument on direct appeal.[26]  Mannino has neither provided

---

("[M]ost claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence.").

[21]  *Massaro*, 538 U.S. at 504.

[22]  *Id.* at 505–09.

[23]  Docket 146 at 5.

[24]  *Id.*; Docket 214 at 6–8; Docket 239 at 1–2.

[25]  Docket 214 at 7.

[26]  *See* Appellant's Br. at 18–52, ECF No. 15, *United States v. Mannino*, No. 16-30149 (9th Cir. 2016) (making no mention of any undisclosed recordings or the "*Brady*" letter).

cause for his failure to do so, nor established his actual innocence. Thus, his allegation is procedurally defaulted and cannot be raised here.[27]

But even if Mannino had raised this argument on appeal, the record definitively refutes his allegation. Under *Brady v. Maryland*[28] and subsequent cases, the prosecution has a duty to "disclose all material evidence that could exculpate the defendant."[29] To establish a *Brady* violation, a defendant must show the following: (1) "there must be evidence that is favorable to the defense, either because it is exculpatory or impeaching"; (2) "the government must have willfully or inadvertently failed to produce the evidence"; and (3) "the suppression must have prejudiced the defendant."[30]

In this case, other than the bare assertions in Mannino's petition, there is no evidence that the recordings or "*Brady* letter" he describes ever existed. To the contrary, the record indicates that no such recordings or letter ever existed. The Government has provided a sworn declaration attesting that it contacted Dattan and the now-retired Assistant U.S. Attorney who prosecuted Mannino's case, Joe Bottini, to inform them of Mannino's allegations and ask them if they had any knowledge of the recordings or the "*Brady* letter" Mannino claims to have received.[31] Dattan told the Government that he had no record or recollection of ever receiving such a letter.[32] Bottini told the Government that "the United States never sent the letter described in Mannino's petition, and that no such letter would have been warranted because the alleged recordings referenced in Mannino's motion do not exist."[33] The Government also declared that it performed

---

[27] *Braswell*, 501 F.3d at 1149 n.1.
[28] 373 U.S. 83 (1963).
[29] *Milke v. Ryan*, 711 F.3d 998, 1003 (9th Cir. 2013).
[30] *Id.* at 1012.
[31] Docket 223-1 at 1–2.
[32] *Id.* at 2.
[33] *Id.*

*United States v. Mannino*                                               Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                    Page 5

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 5 of 21

a search of its files in Mannino's case and "found no evidence of the alleged 'Brady letter' or undisclosed recordings."[34]

In short, there is no indication that the "evidence that is favorable to the defense" ever existed. This prevents Mannino from establishing the first element of a *Brady* violation: the existence of "evidence that is favorable to the defense."[35] Thus, even if Mannino had not procedurally defaulted it, his claim would be doomed. Accordingly, the Court concludes that the record refutes Mannino's allegations and that his claim does not merit relief.[36]

## B.      Eliciting Perjured Testimony

Mannino next alleges that his conviction was imposed in violation of the Constitution because "the Government prosecutor presented testimony from Greg Cox," whom Mannino alleges to have "continuously provided misleading, untruthful, and highly prejudicial testimony both during direct and cross examination with no curative instruction from the Trial Judge."[37] Mannino argues that this constituted a *Mooney–Napue* violation.[38]

Under the U.S. Supreme Court's decisions in *Mooney v. Holohan*[39] and *Napue v. Illinois*,[40] "[a] conviction obtained using knowingly perjured testimony violates due process."[41]

---

[34] *Id.*

[35] *Milke*, 711 F.3d at 1012.

[36] Mannino also argues that his constitutional rights were violated when he was not allowed to introduce exculpatory evidence under the rule of completeness. Docket 146 at 5. Mannino did not raise this argument on direct appeal and provides no cause for his failure to do so. It therefore is procedurally defaulted. His ineffective assistance of counsel arguments on this point are addressed in Section (C)(b)(vi).

[37] Docket 146 at 7.

[38] *Id.* at 9. Mannino's reply makes additional allegations on this point, but his allegations are based on other legal theories beyond those in his original petition. Docket 239 at 2–5. Arguments raised for the first time in a reply brief are generally considered waived. *E.g.*, *United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) (per curiam). Accordingly, the Court will not consider Mannino's new arguments.

[39] 294 U.S. 103 (1935).

[40] 360 U.S. 264 (1959).

[41] *United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011).

---

*United States v. Mannino*                                                        Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                                  Page 6

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 6 of 21

To establish a *Mooney–Napue* violation, a defendant "must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material."[42] Ultimately, the question is "whether . . . [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence."[43]

In this case, Mannino did not raise his *Mooney-Napue* claim on direct appeal.[44] Nor has he established the requisite cause and prejudice, or else actual innocence, needed to excuse his failure to do so. Consequently, his claim is procedurally defaulted and cannot be raised here.[45]

Moreover, even if he had not defaulted it, Mannino's allegation still would fail because he has provided no evidence that Cox's trial testimony was actually false. Although Mannino quotes from Cox's testimony at trial, he provides no support for his assertion that any aspects of Cox's testimony were "actually false."[46] Mannino points only to the sentencing hearing in his earlier case, at which Judge Gleason found that Cox was "a not credible person."[47]

Even if Judge Gleason's finding has any relevance to Mannino's case,[48] the fact that a witness is "not credible" does not make his testimony "actually false." Testimony is "actually false" by being *actually false*. Mannino does not explain how any aspects of Cox's trial

---

[42] *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

[43] *Jackson v. Brown*, 513 F.3d 1057, 1072 (9th Cir. 2008) (alteration in original) (quoting *Hall v. Dir. of Corr.*, 343 F.3d 976, 983–84 (9th Cir. 2003) (per curiam)).

[44] *See* Appellant's Br. at 18–52, ECF No. 15, *United States v. Mannino*, No. 16-30149 (9th Cir. 2016).

[45] *Braswell*, 501 F.3d at 1149 n.1.

[46] Mannino asserts that Cox "lied" during some of this testimony but provides no explanation or support for his assertions. Docket 146 at 7–8.

[47] Sentencing Hrg. Trans. at 64–65, ECF No. 140, *United States v. Mannino*, No. 4:13-cr-00021-SLG (D. Alaska Mar. 11, 2015).

[48] It is "presumptively improper" to give preclusive effect to a sentencing court's factual findings in subsequent civil litigation. *Maciel v. Comm'r of Internal Revenue*, 489 F.3d 1018, 1023 (9th Cir. 2007).

*United States v. Mannino*                                                    Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                     Page 7

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 7 of 21

testimony actually were false. Therefore, even if Mannino had not procedurally defaulted his *Mooney–Napue* allegation, the record contains no indication that it has any merit.

## C.    Ineffective Assistance of Counsel

Mannino alleges that his conviction was imposed in violation of the Constitution because he received ineffective assistance of counsel from his trial attorney, Scott Dattan, in twelve different ways. After reviewing the appropriate legal standard, the Court will address each of Mannino's claims in turn.

### (1)    Legal standard

A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-pronged test the U.S. Supreme Court set out in *Strickland v. Washington*.[49] Under that test, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance was prejudicial to the defense.[50]

To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[51] The question for the court is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[52] "Judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[53]

The second *Strickland* prong, prejudice to the defense, "focuses on . . . whether counsel's deficient performance renders the result of . . . the proceeding fundamentally unfair."[54]

---

[49] 466 U.S. 668, 687–96 (1984).
[50] *Id.* at 694.
[51] *Id.*
[52] *Id.* at 690.
[53] *Id.* at 689.
[54] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

*United States v. Mannino*                                        Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                Page 8

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 8 of 21

A defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[55] This standard requires more than asserting that an error theoretically could have had some effect on the outcome, though it does not require a preponderance of the evidence.[56]

Ultimately, a defendant must prove both deficient performance and the resulting prejudice to establish ineffective assistance of counsel.[57] Courts need not inquire whether counsel's performance was deficient if the alleged deficiency could not have resulted in prejudice under *Strickland*.[58]

### (2) Discussion

#### (a) Failure to question prospective jurors about defendant's prior conviction

Mannino first alleges that he received ineffective assistance of counsel when Dattan "failed to questio[n] prospective Jurors regarding Petitioner's prior conviction" during the *voir dire* process.[59] The Government maintains that Dattan's choice was a sound tactical decision.[60]

The Court agrees with the Government. Defendants' due process rights require only that each juror "lay aside his impression or opinion and render a verdict based on the evidence in court."[61] In this case, the Court charged the jurors to be fair and impartial upon swearing them

---

[55] *Strickland*, 466 U.S. at 694.

[56] *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008).

[57] *Pizzuto v. Arave*, 280 F.3d 949, 954 (9th Cir. 2002).

[58] *See id.* at 954–55 (second and third alterations in original) (quoting *Strickland*, 466 U.S. at 697) ("Because [the petitioner] must prove both deficient performance and prejudice, we 'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'").

[59] Docket 146 at 9.

[60] Docket 159 at 15–16.

[61] *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

*United States v. Mannino*                                                                     Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                          Page 9

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 9 of 21

in.[62]  Under controlling precedent, a trial attorney's decision to rely on jurors' commitments to be fair and impartial rather than questioning them about the defendant's criminal history is reasonable and "merits deference as a tactical decision."[63]  Hence, Dattan's decision not to question the potential juror about Mannino's prior convictions was within the "wide range of professionally competent assistance" described in *Strickland*.

Mannino fails to provide any explanation or citation to legal authority for his assertion that Dattan's decision could have constituted deficient performance.  Accordingly, the Court finds that the record conclusively establishes that Dattan's performance on this point was not deficient and did not constitute ineffective assistance of counsel.

### (b)  Failure to object to wiretap evidence

Mannino next alleges that he received ineffective assistance of counsel when Dattan "failed to object or file a motion to suppress the fruits of . . . wiretap evidence" regarding recorded conversations between Mannino and a government informant.[64]  The Government maintains that the evidence was legal and that it would have been frivolous for Dattan to object to its introduction.[65]

The Court agrees with the Government.  Mannino fails to explain how Dattan's failure to object to the introduction of the conversations constituted deficient performance.  Mannino's motion merely cites to the wiretap statutes in Title 18 of the United States Code, which prescribe the procedures for law enforcement to obtain judicial approval for wiretaps.[66]  But Mannino does not explain how these statutes relate to the recordings in his case, nor does he

---

[62] Docket 91 at 2.
[63] *Wilson v. Henry*, 185 F.3d 986, 991 (9th Cir. 1999).
[64] Docket 146 at 10–12.
[65] Docket 159 at 16–17.
[66] Docket 146 at 11.

attempt to explain how Dattan's failure to object to the recordings' introduction could have constituted constitutionally deficient performance. Because Mannino provides no argument to the contrary, the Court concludes that Mannino has not overcome the "strong presumption" that Dattan's performance was within the "wide range of professionally competent assistance."[67]

### (c)     Failure to object to government witness sitting at prosecution table

Mannino next alleges that he received ineffective assistance of counsel when Dattan did not "rais[e] an objection to a Government witness and agent (Agent Derrick Stone) sitting at the Government's table during trial."[68] The Government maintains that Dattan's performance was not deficient because "a case agent is permitted at prosecution's table to assist with trial."[69]

Mannino's argument is unavailing. Rule 615 of the Federal Rules of Evidence provides that the testifying-witness exclusion rule does not apply to "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney."[70] This rule has long been interpreted to allow a government agent, such as a law enforcement officer who has overseen an investigation, to remain in court and sit at the prosecution table during trial, despite being a testifying witness.[71] This practice is common and is within the district court's discretion.[72]

Mannino fails to offer any explanation for how Dattan's failure to object to the government witness's presence at the prosecution table could have constituted constitutionally

---

[67] *Strickland*, 466 U.S. at 689.
[68] Docket 146 at 12–13.
[69] Docket 159 at 17.
[70] Fed. R. Evid. 615(b).
[71] *United States v. Valencia-Riascos*, 696 F.3d 938, 941 (9th Cir. 2012).
[72] *See, e.g.*, *id.*; *United States v. Thomas*, 835 F.2d 219, 222–23 (9th Cir. 1987); *United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1985); *United States v. Meyer*, 403 F.2d 52, 52 (9th Cir. 1968) (per curiam); *United States v. Salard*, No. 1:14-cr-00012-TMB, 2015 WL 4450047 at *4 (D. Alaska July 18, 2015).

*United States v. Mannino*                                                   Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                Page 11

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 11 of 21

deficient performance under *Strickland*.  Accordingly, the Court concludes that Mannino's allegation on this point is conclusively without merit.

### (d)     Failure to object to prosecution's "personal views" in opening and closing arguments

Mannino next alleges that he received ineffective assistance of counsel when Dattan failed to object to the prosecutor's "improper expressions of personal views about Petitioner's guilt" during his opening and closing arguments.[73]  The Government maintains that Mannino's allegation "has already been decided by the [Ninth Circuit] when the same arguments were raised in his appellate brief."[74]

The Court agrees with the Government. Mannino raised the issue of the prosecutor's statements in his direct appeal,[75] and the Ninth Circuit held that any instances of prosecutorial misconduct were harmless errors.[76]  Although the Ninth Circuit's holding does not necessarily determine that Dattan's performance was not deficient, it does establish that any deficiency in Dattan's performance cannot have prejudiced Mannino's defense.[77]  Because any deficiency in Dattan's performance on this point could not have prejudiced Mannino, the Court concludes that his claim is without merit.[78]

### (e)     Failure to object to introduction of evidence of Defendant's prior bad acts

Mannino next alleges that he received ineffective assistance of counsel when Dattan failed to object to or seek to suppress witness M.J. Haden's testimony about Mannino's prior

---

[73] Docket 146 at 13–14.
[74] Docket 159 at 17.
[75] Appellant's Br. at 38–42, ECF No. 15, *United States v. Mannino*, No. 16-30149 (9th Cir. 2016).
[76] *Mannino*, 706 F. App'x at 356.
[77] Because the harmless-error standard is higher in direct appeals than it is in habeas proceedings, *Brecht v. Abrahamson*, 507 U.S. 619, 622–23 (1993), a conclusion of harmless error for lack of prejudice on direct appeal of an issue dictates the same conclusion in a collateral attack.
[78] *See Pizzuto*, 280 F.3d at 954–55.

*United States v. Mannino*                                                                     Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                                    Page 12

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 12 of 21

conviction and witness Greg Cox's testimony that Mannino had previously solicited him to kill local Fairbanks attorney John Tiemessen.[79]

The Government maintains that Dattan's failure to object to Haden's testimony did not constitute deficient performance because the objection would have been "frivolous."[80] The Government argues that Dattan's failure to seek to suppress Cox's testimony did not constitute deficient performance because making objections is "quintessential trial strategy" and no precedent "remotely addresses or resolves the dubious application of collateral estoppel that Defendant presses here: excluding a witness's criminal trial testimony based on a credibility finding at a sentencing hearing in a different case."[81]

Regarding Dattan's failure to object to Haden's testimony, the Court concludes that Mannino's claim is without merit. At his trial, Mannino was charged with soliciting Haden's murder. The Government's theory was that Mannino had solicited Haden's murder because he was displeased with the plea agreement she had negotiated while representing him in his previous criminal case. This made Mannino's prior conviction a central fact to the Government's case-in-chief on that count of the indictment and provided a strong basis for the evidence's admission under Rule 404(b)(2). Moreover, in its final jury instructions, the Court instructed the jury that Mannino was "not on trial for any conduct or offense not charged in the Indictment."[82] These facts, combined with the strong presumption of proficiency the Court must give counsel's performance, conclusively establish that Dattan's failure to object to Haden's testimony did not constitute ineffective assistance of counsel and cannot have prejudiced Mannino's defense.

---

[79] Docket 146 at 14–16; Docket 214 at 8–11.
[80] Docket 159 at 17–18.
[81] Docket 214 at 12.
[82] Docket 91 at 39.

*United States v. Mannino*                                                                 Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                      Page 13

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 13 of 21

Regarding Dattan's failure to seek to suppress Cox's testimony, the Court finds Mannino's claim also to be meritless under the theory he advances. Mannino's argument regarding Dattan's failure to object or seek to suppress Cox's testimony "rel[ies] on specific findings by Judge Gleason that Mr. Cox was 'not credible' and that the Government evidence was not 'sufficient to demonstrate that Mr. Mannino had solicited Mr. Cox with the intention of murdering Mr. Tiemessen.'"[83] Mannino argues that Dattan should have objected because Judge Gleason's sentencing finding "should [have] bar[red] relitigation of this issue under the principle of collateral estoppel."[84]

But Mannino's claim lacks any valid legal basis. He provides no citation to any legal authorities holding that sentencing findings may have preclusive effect in subsequent criminal cases, and the Court has been unable to locate any such precedents itself. The only case Mannino cites, *Ashe v. Swenson*, held only that a jury's acquittal of a defendant collaterally estopped the Government from prosecuting him for a second crime in which a guilty verdict would have directly contradicted the previous jury's acquittal.[85] That holding is irrelevant to Mannino's situation. Mannino's argument relies on judicial findings from a sentencing hearing, not an acquittal by a jury.

Moreover, existing precedents seem to contradict Mannino's arguments. A judge's factual findings in a sentencing hearing are presumed to have no preclusive effect in subsequent civil litigation because sentencing hearings do not normally provide litigants the "full and fair" opportunities to litigate issues that "plenary civil trials" provide.[86] Because Mannino provides no valid authority for the legal theory underlying his claim that Dattan should have objected to Cox's

---

[83] *Id.* at 10.
[84] *Id.*
[85] 397 U.S. 436, 445–47 (1970).
[86] *Maciel*, 489 F.3d at 1023–24.

*United States v. Mannino*                                          Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                Page 14

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 14 of 21

testimony on the grounds of collateral estoppel, the Court finds that his claim regarding Dattan's failure to object to Cox's testimony is conclusively without merit.

### (f) Failure to move for introduction of additional evidence

Mannino next alleges that he received ineffective assistance of counsel when Dattan "fail[ed] to raise an objection or file a motion because Petitioner was prohibited from introducing his exculpatory statements after the Government prosecutor introduced his inculpatory statements."[87] The Government maintains that Dattan's performance was not deficient because "counsel is not required to file briefs in opposition to every motion" and "counsel did move to exclude transcripts of these recordings."[88]

The Court finds Mannino's arguments without merit. Referencing Rule 106 of the Federal Rules of Evidence, Mannino simply argues that he "should have been allowed to offer exculpatory statements."[89] Although his argument is not entirely clear, he appears to argue that Dattan should have required the Court to read the entirety of Mannino's recorded conversations with the government informant for the jury. But Mannino gives no explanation or citation to relevant legal authority to demonstrate how Dattan's failure to do so constituted deficient performance. When to raise evidentiary objections and when to agree to the admission of evidence are trial management decisions that are "the lawyer's province."[90] Given the strong presumption the Court must give trial counsel's performance, the Court concludes that Mannino's claim on this point is conclusively without merit.

---

[87] Docket 146 at 16–17.
[88] Docket 159 at 18.
[89] Docket 146 at 16.
[90] *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018).

### (g) Failure to request a jury instruction on renunciation defense

Mannino next alleges that he received ineffective assistance of counsel by virtue of Dattan's "not requesting an instruction on the Renunciation Defense."[91] The Government maintains that Dattan's performance cannot have been deficient because the Ninth Circuit concluded that the Court did not err when it did not give a jury instruction on the renunciation defense *sua sponte* at Mannino's trial.[92]

Mannino's allegations are without merit. As an initial matter, Mannino fails to explain how Dattan's failure to request a jury instruction on the renunciation defense might constitute deficient performance. But even if he had, the omission could not have prejudiced Mannino. As the Ninth Circuit observed in Mannino's direct appeal, Mannino "did not . . . rely on the defense in his theory of the case."[93] Because he did not rely on the renunciation defense, any deficiency in Dattan's failure to request a jury instruction regarding it cannot have prejudiced Mannino's defense. Consequently, the record conclusively establishes that Mannino's allegation on this point does not merit relief.

### (h) Failure to object to incorrect standard of proof in jury instructions

Mannino next argues that he received ineffective assistance of counsel when Dattan "failed to object to the erroneous jury instructions regarding (Lower Standard of Proof) [*sic*]." He alleges that "[t]hroughout the Court's instructions to the jury, the trial Judge repeatedly used the word *May*, rather than *Must*, which is the correct legal standard," pointing to uses of the word "may" in Jury Instruction Nos. 25, 28, and 30.[94]

---

[91] Docket 146 at 17.
[92] Docket 159 at 19.
[93] *Mannino*, 706 F. App'x at 355.
[94] Docket 146 at 19.

Mannino's argument is unavailing.  None of these instances of "may" describe the burden of proof for the elements of the crimes with which Mannino was charged.  They explain things such as how the jury may arrive at logical conclusions, what type of facts the jury may find "strongly corroborative" of the intent to solicit the crime, and what facts the jury may consider when making a determination on the affirmative defense of entrapment.[95]  The jury instructions were neither misleading nor legally inaccurate.  The record establishes that Mannino's claim on this point is conclusively without merit.

### (i)    Failure to request a jury instruction on a lesser included offense

Mannino next alleges that he received ineffective assistance of counsel when Dattan "failed to request a lesser included offense jury instruction."[96]  The Government maintains that Mannino's claim is without merit because any error on Dattan's part cannot have prejudiced Mannino.[97]

The Court agrees with the Government.  As an initial matter, Mannino fails to explain how Dattan's failure to make the request in question might have constituted deficient performance, nor does he even explain what lesser included offense Dattan might have requested an instruction on.  Moreover, even if he had, Dattan's failure could not have prejudiced Mannino.  The Ninth Circuit concluded that Mannino's conviction was supported by sufficient evidence.[98]  This makes it manifestly unlikely that the jury might have convicted Mannino only on a lesser

---

[95] *See* Docket 91 at 28–33.  These instructions' phrasings come mainly from the Ninth Circuit's Model Criminal Jury Instructions.
[96] Docket 146 at 21.
[97] Docket 159 at 20.
[98] *Mannino*, 706 F. App'x at 355.

included offense. Accordingly, any failure by Dattan to request a lesser included offense cannot have prejudiced Mannino, and his allegation is conclusively without merit.[99]

### (j)  Failure to object to "ambiguous charge to the jury"

Mannino next alleges that he received ineffective assistance of counsel when "the District Court suggested [an] erroneous and structurally ambiguous jury charge" and Dattan failed to object. Mannino observes that the jury instructions twice referred to Mannino as "the Defendant," then later referred to him as "Defendant" without the definite article "the." According to Mannino, this was an error to which Dattan's failure to object constituted deficient performance.[100]

Mannino's argument is unavailing and borders on the frivolous. Mannino fails to give any explanation for how the Court's omission of the definite article "the" might have constituted legal error, let alone explain how Dattan's failure to object to the language in question might have constituted deficient performance. Mannino says only that the Court's instruction constituted a "declarative instruction" that "usurped the Jury's role."[101] But there is no such thing as a "declarative instruction," and the Court has uncovered no references to any such phrase in its research. Mannino cites two Ninth Circuit cases, but they make no mention of any "declarative instructions" and appear to have no direct relevance to his allegations. Mannino does not explain how those cases support his argument and fails to give even cursory pincites to specific passages in the opinions to help demonstrate his reasoning. "Judges are not like pigs, hunting for truffles

---

[99] *See Crace v. Herzog*, 798 F.3d 840, 849 (9th Cir. 2015) ("[I]n ineffective-assistance cases involving a failure to request a lesser-included-offense instruction, *Strickland* requires a reviewing court to assess the likelihood that the defendant's jury would have convicted only on the lesser included offense.").
[100] Docket 146 at 22.
[101] *Id.*

*United States v. Mannino*                                                              Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                          Page 18

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 18 of 21

buried in briefs,"[102] and the Court will not "manufacture" arguments for parties.[103] For these reasons, the Court concludes that the record conclusively establishes that Mannino's claim on this point is without merit.

### (k) Failure to request a jury instruction on elements of criminal intent

Mannino next alleges that he received ineffective assistance of counsel when "the Court's instruction to the jury was convoluted and difficult to understand due the [*sic*] requisite instructions as to the elements that create criminal intent: knowing and willfully."[104] But Mannino gives no explanation as to how the jury instructions were "convoluted" or how their convolution might have constituted legal error. Nor does he explain how—or even allege that—Dattan failed to object to the jury instructions in a way that might have constituted deficient performance. The Court will not "manufacture" legal arguments for a party, and Mannino's conclusory allegations are without any merit.[105]

### (l) Failure to request a jury instruction on "good faith reliance on counsel"

Mannino's last ineffective assistance of counsel allegation is that Dattan "failed to request an instruction that Petitioner was acting in good-faith in relying on his Counsel."[106] As with his previous claim, however, Mannino gives no explanation for how Dattan's failure to request such an instruction constituted deficient performance.

Moreover, even if Dattan's performance was deficient, it could not have prejudiced Mannino's defense. Mannino appears to be referencing the subjective good faith defense to

---

[102] *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))
[103] *See Aguilar*, 782 F.3d at 1108.
[104] Docket 146 at 23.
[105] *See Aguilar*, 782 F.3d at 1108.
[106] Docket 146 at 23.

*United States v. Mannino*                                                        Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                           Page 19

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 19 of 21

willfulness the U.S. Supreme Court recognized in *Cheek v. United States*.[107]  But the *Cheek* defense is extremely narrow and is only available to defendants charged under the "highly technical" criminal tax and financial restructuring statutes, whose complexities "present[] the danger of ensnaring individuals engaged in apparently innocent conduct."[108]  It does not apply to the solicitation statute under which Mannino was indicted and convicted.[109]  Accordingly, any deficiency in Dattan's performance on this point could not have prejudiced Mannino, and his claim may be summarily dismissed.[110]

## D.    Introduction of Prior Bad Act Evidence Without Notice

Lastly, Mannino alleges that "the District Court abused its discretion when it should have entitled Petitioner a limiting instruction regarding prior bad acts evidence."[111]  He claims this error violated "his rights under the Double Jeopardy Clause."[112]  But Mannino did not raise this claim on direct appeal,[113] and he provides neither cause for his failure to do so nor establishes that he is "actually innocent."  Accordingly, Mannino's claim is procedurally defaulted and cannot be raised here.[114]

Even if Mannino's claim were not defaulted, the Court would find that it lacks merit.  First, Mannino makes no legal argument in support of his constitutional conclusion.

---

[107]  498 U.S. 192, 199–203 (1991).
[108]  *United States v. Bryan*, 524 U.S. 184, 194–95 (1998).
[109]  *See, e.g.*, *United States v. Lorenzo*, 995 F.2d 1448, 1455 (9th Cir. 1993) (refusing to extend the good-faith defense beyond criminal tax cases).
[110]  *See Pizzuto*, 280 F.3d at 954.
[111]  Docket 146 at 24.
[112]  *Id.* at 25.
[113]  *See* Appellant's Br. at 18–52, ECF No. 15, *United States v. Mannino*, No. 16-30149 (9th Cir. 2016).
[114]  *Braswell*, 501 F.3d at 1149 n.1.

*United States v. Mannino*                                                    Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                    Page 20
Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 20 of 21

Second, even if he had, Mannino's argument still would fail because the collateral estoppel component of the Double Jeopardy Clause does not apply to prior bad act evidence.[115]

The remainder of Mannino's arguments on this point involve evidentiary law, and Mannino does not explain how they implicate his constitutional rights. Even if he had, Mannino did not raise these arguments on direct appeal. Because he provided no cause for his failure to do so, these claims also would be procedurally defaulted.[116]

## V.  CERTIFICATE OF APPEALABILITY

Based on its analysis of his claims, the Court concludes that Defendant has not made a substantial showing of a denial of a constitutional right. In the Court's view, reasonable jurists could not disagree with its resolution of Mannino's constitutional claims, nor could they conclude that the issues he raises "are adequate to deserve encouragement to proceed further."[117] Therefore, pursuant to 28 U.S.C. § 2253(c), a Certificate of Appealability shall not issue.

## VI.  CONCLUSION

The Court concludes that each of Mannino's claims either are procedurally defaulted or else clearly without merit. Therefore, Defendant's Motion at Dockets 146 and 214 to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED this 19th day of May, 2022, at Anchorage, Alaska.


*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

---

[115] *See, e.g.*, *Dowling v. United States*, 493 U.S. 342, 348–49 (1990).
[116] *Braswell*, 501 F.3d at 1149 n.1.
[117] *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

*United States v. Mannino*                                                    Case No. 3:14-cr-00026-RRB
Order and Opinion on Petition to Vacate Sentence Under 28 U.S.C. §2255                        Page 21

Case 4:14-cr-00026-RRB   Document 240   Filed 05/19/22   Page 21 of 21